Date signed June 30, 2011



DUNCAN W. KEIR
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
at Baltimore

| | | |
|---|---|---|
| In Re: | * | |
| Rhea K. Simms, | * | Case No.    10-22579 |
| | * | Chapter    13 |
| | * | |
| | * | |
| Debtor. | * | |

## MEMORANDUM OPINION

Before the court is the Debtor's Amended Chapter 13 plan and the objection to confirmation thereto by the Chapter 13 Trustee (the "Trustee"). The court held a confirmation hearing on November 9, 2010, at which the parties presented arguments and the court took the matter under advisement. Debtor and Trustee were given an opportunity to provide the court with legal support for their positions, but neither side directed the court to any authorities.

Debtor, who was married at the time of petition and remains married, filed an individual bankruptcy petition. The only joint debt with the Debtor's non-filing spouse is the Note and Deed of Trust on their residence and Debtor represented to the court that there is no delinquency on that debt and indeed no claim was filed by the lender. Debtor lists $77,863.00 in unsecured debt on her Schedule F, appearing to consist largely of credit card debt. Claims were filed in the amount of $65,970.47.

According to the Debtor's Schedules, the vast majority of household income is attributable to her spouse's wages. Debtor lists joint monthly take-home income on Schedule I as $8,159.07[1] and monthly expenses on Schedule J as $7,446.78. Accordingly, based on Schedules I and J, Debtor has monthly net household income of $712.29. The Debtor's Official Form B22C (hereafter the "B22C"), however, applying national and local standard deductions from income, results in a "monthly disposable income under § 1325(b)(2)" of $4,771.44.[2]

The Debtor's initial chapter 13 plan proposed to pay to the trustee $281 per month for 60 months, for total funding of $16,860.[3] Debtor subsequently filed an amended plan proposing to pay $281 for the first 4 months and $712 per month for the following 56 months, for a total funding of $40,996. The Debtor's counsel represented to the court at the confirmation hearing that if the current plan is confirmed, creditors will recover "roughly 40 cents on the dollar".

The Trustee objects to the Debtor's proposed plan contribution of only $40,996 because that level of funding would not provide that all projected disposable income during the commitment period of the plan be dedicated as required. She argues that with a monthly disposable income of $4,771.44 as reflected in the B22C (which equates to $286,000 over the five year plan period), Debtor has the obligation to contribute more than $712 per month and can in fact, fund a 100% plan so that unsecured creditors will be paid in full.

---

[1] Schedule I reflects that Debtor has monthly gross wages of $1,662.53 and her spouse of $9,386, with average monthly income (take home plus additional income) respectively of $1,354.46 and $6,804.61, for a combined average monthly income of $8,159.07.

[2] Debtor has filed three B22C statements. The court refers to the most recent filing, the Second Amended Chapter 13 Statement of Current Monthly and Disposable Income, filed on August 18, 2010.

[3] Of the plan funds, $3,500 will be payable to the Debtor's counsel as an administrative expense.

Debtor responds that she is unable to further increase her monthly plan payments because her spouse is unwilling to contribute his earnings to her bankruptcy plan. Debtor states that she is already contributing over 50% of her own take-home pay to the plan and that creditors are receiving a sizeable distribution given her limited individual income. Debtor concedes that if the B22C test for "disposable income" under Section 1325 is controlling, then the plan must be denied. However, Debtor disagrees that Section 1325 requires her to pay the full amount of monthly disposable income that appears on her B22C.

Accordingly, the question before the court is whether a plan must include the entire amount shown to be disposable income on a debtor's B22C calculation where a significant portion of that disposable income is attributable to the non-filing spouse's salary.

Section 1325(b) provides:

(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
    (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
    (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1).

In the instant case, the Debtor's plan does not propose to pay 100% of claims and the Trustee has objected. Accordingly, under Section 1325(b)(1), Debtor is required to commit all of her "projected disposable income" for the five year period.[4] The term "projected disposable

---

[4] Section 1325(b)(4) defines the "applicable commitment period" and both Debtor and the Trustee agree that based upon the current monthly income of Debtor and her spouse, the Debtor's plan must be five years.

income" is not defined in the Bankruptcy Code.  Rather, the definitions of "disposable income" (without the word "projected") and some terms used within that definition are set forth in Section 1325(b)(2) and (3):

> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—
>    (A)  (i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
>          (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548 (d)(3)) to a qualified religious or charitable entity or organization (as defined in section 548 (d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
>    (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.
> (3) Amounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), shall be determined in accordance with subparagraphs (A) and (B) of section 707 (b)(2), if the debtor has current monthly income, when multiplied by 12, greater than—
>    . . .
>    (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals. . . .

11 U.S.C. § 1325(b)(2) and (3).

This court addressed the comparison of the means test under Section 1325(b)(2) to the B22C calculation in *In re Watson,* 366 B.R. 523 (Bankr. D. Md. 2007).  Therein, the court found, *inter*

4

*alia*,[5] that it had discretion to confirm a plan using a projected disposable income figure that differed from the B22C income and expense calculation. *Id.* at 531-32. The court held that the B22C form number is merely a starting point for the court's analysis and that upon evidence that the B22C calculation is not an accurate projection of the debtor's projected disposable income, the court may confirm a plan which commits funding in accordance with that evidence.[6]  *Id.*

The Trustee herein is urging this court to adopt the B22C calculation. She states that the Debtor's argument that the non-filing spouse refuses to contribute his income does not rise to the level of the significant changes to disposable income that the existing caselaw contemplates when finding that projected disposable income can be greater or less than the B22C calculation.

Prior to the changes to the Bankruptcy Code implemented by BAPCPA,[7] courts regularly held that the incomes of both the debtor and a non-filing spouse must be included in the initial calculation of disposable income for purposes of plan funding. The United States Bankruptcy Court for the Eastern District of Texas reviewed the pre-BAPCPA opinions on this issue in *In re*

---

[5] In *Watson*, this court found that the Bankruptcy Code permitted the debtor to deduct a standard ownership deduction as an applicable monthly expense, even where the debtor did not owe money on a vehicle lease or loan, however, the court had the discretion to adjust the projected disposable income required by the plan based on the fact that such payment was not being incurred and such funds were available in the debtor's budget. While the first part of the court's holding was rejected by the holding of the United States Supreme Court in *Ransom v. FIA Card Services, N.A.*, __ U.S. __, 131 S.Ct. 716, 721-22 (2011), the Supreme Court has reached the same conclusion as this court did as to the court's limited discretion as to projected disposable income in *Hamilton v. Lanning*, __ U.S. __, 130 S.Ct. 2464, 2471-72 (2010).

[6] This holding was further enunciated in this court's case of *In re Wick*, 421 B.R. 206 (Bankr. D. Md. 2010) wherein this court acknowledged its discretion, but refused to exercise such where no party demonstrated evidence of significant changes to occur during the course of the plan commitment period. *See also Hamilton v. Lanning*, 130 S.Ct. at 2478 (holding that "the court may account for changes that are known or virtually certain at the time of confirmation").

[7] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 11 Stat. 23, and effective October 17, 2005 is commonly known as BAPCPA.

*Charles*, 375 B.R. 338, 341 (Bankr. E.D.Tx. 2007). As discussed in *Charles*, the courts were interested in ensuring that the bankruptcy estates did not bear an undue burden of the regular expenses of the debtor and decrease disposable income which could be dedicated to the plan. *See also In re Bottorff*, 232 B.R. 171 (Bankr. W.D. Mo. 1999).

BAPCPA, however, included a new definition of "current monthly income" in Section 101(10A) which defined the term differently than merely as all joint income, which is the initial standard at which courts had been beginning their analyses.

> The new definition provides:
>
> The term 'current monthly income'-
> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receives) without regard to whether such income is taxable income, derived during the 6-month period ending on-
>     (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
>     (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent). . . .

11 U.S.C. 101(10A). Accordingly, the Section 1325(b)(2) and B22C calculations of disposable income which are based upon current monthly income, should include a non-filing spouse's income only to the extent that the income is regularly contributed to household income. In *Charles*, 375 B.R. at 342, the court was faced with the question of whether the debtor's plan should include a step-up in payments at such time that the non-filing spouse's car payments ended three months into the plan. The court overruled the trustee's objection to the plan (which did not include the stepped up payments) stating that when the car payments are complete, the non-filing spouse is not required

to contribute those funds to the household expenses. The court reasoned that "[w]hile it is disposable income in the generic sense, the Code clarifies that it is no longer a component of the debtor's projected disposable income for the purposes of § 1325(b)(1)(B)." *Id.* at 342. *See also In re Trimarchi*, 421 B.R. 914 (Bankr. N.D. Ill. 2010); *In re Louviere*, 389 B.R. 502, 508-11 (Bankr. E.D. Tx 2008); *In re Quarterman*, 342 B.R 647 (Bankr. M.D. Fla. 2006).

Even with the BAPCPA changes, the equity of allowing a non-debtor spouse to exclude income is an issue in the good faith analysis required at confirmation. In *In re Waechter*, 439 B.R. 253 (Bankr. D. Mass. 2010), the court held that even where the Bankruptcy Code did not require a debtor to include the income of her non-filing spouse where there was a pre-marital agreement specifying that he was not required to contribute to household expenses, the debtor's plan could not be confirmed because she could not demonstrate good faith where the entire household expenses were being deducted from her sole income. *Id.* at 257. Thus, the requirement that the court analyze whether the projected disposable income proposed as contribution to the plan is an accurate reflection of the parties' respective contributions to, and benefits from, the household finances, is found not only in Section 1325(b)(1)(B), but in Section 1325(a)(3).[8]

The current definitions of projected disposable income and current monthly expenses leads the court to the conclusion that the Debtor's B22C statement may not accurately reflect the portion of the non-filing spouse's income which he does not contribute to household expenses. In an

---

[8] The question may also arise in cases where a large part of the unsecured debt to be discharged may also have benefitted the non-filing spouse or the household in general, though the court recognizes the difficulty for the trustees or creditors in ascertaining or pursuing such. In the instant case, for example, most of the $77,000 listed on Schedule F is credit card debt. Whether any of those charges were for personal goods, services, vacations, etc. which benefitted the non-filing spouse is not part of the record, but would be evidence bearing on good faith as required for plan confirmation.

unpublished but instructive case within this Circuit, in *In re Grubbs*, 2007 WL 4418146 (Bankr. E.D.Va.), the court analyzed what portion of the non-filing spouse's income should be included in the B22C calculation to determine the applicable commitment period for the debtor's chapter 13 plan.  Applying the definition of "current monthly income" from Section 101(10A), the court overruled the trustee's objection and found that the debtor properly took a marital adjustment on line 13 of the  B22C.  *Id.* at *4.  The court recognized that under Section 101(10A), the entire income of the debtor's spouse is included in current monthly income only where it is a joint case.  *Id.* at *3.  In a non-joint case, the income of the non-filing spouse is included only to the extent it is used as a contribution to household expenses.  Accordingly, line 13 of the B22C form is the opportunity for the debtor to subtract from the income calculation any of the non-filing spouse's income not regularly contributed to the household expenses.

The court references this analogous opinion because line 19 of the B22C includes the opportunity for a debtor to include the marital adjustment for the purpose of determining disposable income which, as discussed earlier, will be used as the starting point for the court's determination of projected disposable income required for plan confirmation under Section 1325(b)(1)(B).  In the instant case, although Debtor seems to argue that her non-filing spouse has income not being committed to the household expenses and which earnings he is unwilling to commit to plan funding, she has not taken a marital adjustment at line 19.  Without such adjustment, all of the non-filing spouse's income is  included in the "current monthly income" upon which disposable income is then calculated.

The debtor has introduced no evidence to support a finding that projected disposable income

should be lower than the disposable income calculated on B22C under the standards enunciated in the *Watson* and *Hamilton v. Lanning* cases. For example, there is no evidence of changes occurring after the time frame during which "current monthly income" as calculated under Section 1325(b)(2)and (3) and as depicted upon B22C (i.e., no salary increases/decreases, anticipated additional expenses or a reduction). Thus, on the record currently before the court, the plan as filed cannot be confirmed as the funding is significantly less than required by Section 1325(b). Because it is not shown that there is no reasonable prospect for a confirmable plan to be achieved in this case, the court will deny confirmation with leave to amend either the proposed plan, and/or the B22C.

If a marital adjustment is taken upon a revised B22C, but confirmation is again challenged by the Trustee or a creditor asserting that all projected disposable income is not dedicated to the plan because the adjustment should not be allowed, Debtor will bear the burden of proof as a debtor does for all elements required to be demonstrated for confirmation of a plan. *See*, *e.g., In re Stewart*, 172 B.R. 14, 15 (W.D. Va. 1994)("The burden is on the debtor to prove that a proposed plan complies with Chapter 13."); *In re Lewis*, 170 B.R. 861, 865 ("The debtor, as plan proponent, bears the ultimate burden to prove that all confirmation criteria are met."). Generally such an adjustment, which in most cases will benefit an insider (spouse) of the debtor, should be strictly scrutinized by the court as it is susceptible to abuse. *See* H.R. Rep. 95-595 (1977) (in the context of a transfer "[a]n insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor.. . if the debtor is an individual, then a relative of the debtor. . . ."). Courts also have opined that in general, challenges to marital adjustments in the B22 forms should be strictly scrutinized because of their

impact on a debtor's ability to qualify and receive bankruptcy relief. *See In re Sale,* 397 B.R. 281, 288 (Bankr. M.D.N.C. 2007) (citing *In re Travis*, 353 B.R. 520, 526 (Bankr. E.D.Mich. 2006)).

Factors which may be reviewed in determining the allowance of a martial adjustment on B22C include the particular history behind the non-filed spouse's refusal to contribute all income to the household. For example, is it based upon legal or financial advice at a time bankruptcy of the debtor was in prospect (which would not be supportive of such deduction)? What are the specific facts as to the marital relationship and the debts to be discharged under the plan? Were the debts occurred solely by the debtor and before the marriage? What is the nature of the debts to be discharged and the benefits received in exchange for the debt? Is the non-filing spouse legally obligated to repay debts and thus will benefit by plan payments reducing that co-liability? Were goods or services received in exchange for the indebtedness which receipt benefitted the non-filing spouse? These are but examples of facts which will be factors in determining the allowance of an adjustment on B22C.

In addition those same facts may be relevant to the additional confirmation requirement that a plan be proposed in good faith.[9] It will often be relevant to a good faith determination to ascertain from the evidence the extent that the non-filed spouse contributes to the household, benefits from the existence of the household, and should be held responsible for the costs of maintaining the household, including for the benefit of children. Creditors should not unfairly be required to shoulder the non-filing spouse's equitable burden through reduced plan payments.

An Order in accordance with this Memorandum will be entered herewith.

---

[9] 11 U.S.C. § 1325(a)(3).

cc: Debtor
   Debtor's Counsel
   Chapter 13 Trustee
   Office of the United States Trustee
   All creditors and parties in interest

**End of Memorandum**